989 F.2d 484
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
William M. TYREE, Jr., Plaintiff, Appellant,
v.
Michael V. FAIR, et al., Defendants, Appellees.
 Nos. 92-1742, 92-1743, 92-1744, 92-1745, 92-1746.
 United States Court of Appeals,
First Circuit.
 March 9, 1993.
 
 Appeals from the United States District Court for the District of Massachusetts
 William M. Tyree, Jr. on brief pro se.
 Nancy Ankers White, Special Assistant Attorney General, and Richard C. McFarland, Supervising Counsel, Department of Correction, on Memorandum of Law in Support of Motion for Summary Disposition, for appellees.
 D.Mass.
 AFFIRMED.
 Before Breyer, Chief Judge, Torruella and Cyr, Circuit Judges.
 Per Curiam.
 
 
 1
 Appellant, William M. Tyree, Jr., currently is imprisoned in the Cedar Junction Massachusetts Correctional Institute; he is serving a life sentence for first-degree murder. On December 27, 1988, appellant was transferred from Cedar Junction to the Old Colony Correctional Center where he spent twenty-seven days in the administrative segregation unit. On February 8, 1989, appellant filed five separate complaints in the Massachusetts district court concerning his prison status and his transfer to and residence at Old Colony. The district court dismissed all five actions for lack of prosecution. A brief description of each action follows.
 
 I.
 
 2
 1. Appellant alleges that when he was transferred to Old Colony, prison officials refused to allow him to use his television set with speakers; instead, he was required, under regulations apparently promulgated in 1983, to use earplugs or headphones. He claims that this rule was an ex post facto violation of the United States Constitution because appellant had been allowed the use of a television set with speakers since the beginning of his incarceration in 1979. He also maintained that his civil rights were infringed on the ground that the regulation did not contain an exception that allowed hearing-impaired prisoners to use television sets with speakers. In this action, the defendants were served with process. They filed their answer in May 1989.
 
 
 3
 2. Because appellant had enemies at Old Colony and because Old Colony lacked a protection unit, appellant avers that he was forced into administrative segregation for the twenty-seven days he spent at Old Colony. During this time, appellant claims that he was denied proper medical care. Specifically, prison officials allegedly refused to allow appellant to bring with him two knee braces he needed for support. He further alleged that he did not receive sufficient daily exercise and did not have access to a "universal" weight machine. In addition to these complaints, appellant states that the prison officials refused to ensure that all of his mail was being sent out, that the transfer made it difficult for him to receive visitors and that, after "punching out" two glass windows, appellant was placed in the "nut room" and threatened with the possibility of being chained to the bed. None of the defendants named in this action were served with process.
 
 
 4
 3. Appellant states that while in the segregation unit he did not have access, as did the prisoners in the general population, to a footlocker in which to store his personal belongings. He also claims that defendants used a two-way window and an electronic eavesdropping sound gun to monitor all of appellant's visits with outsiders. As in the previously described action, appellant failed to serve defendants with his complaint.
 
 
 5
 4. In the fourth complaint, appellant alleges that in 1985 he was transferred to a higher security prison as the result of allegations he had made concerning employee discrimination in the Massachusetts prison system. Due to his involvement in this matter, appellant asserts that he became known as a legal and political troublemaker. He charges that he made defendants aware of the fact that due to the above allegations, he had enemies at Old Colony. He again asserts that he needed to be placed in administrative segregation at Old Colony-the only place where he felt safe. All of the defendants were served with process in this action and they filed answers in May 1989.
 
 
 6
 5. Appellant claims that under a prison regulation, an inmate who refuses to transfer to a lower security prison loses work privileges, is not permitted to attend vocational, educational and other institutional programs, and is not allowed to attend church. Appellant asserts that he lost the above privileges due to his refusal to transfer to a medium security prison. In this action, appellant served the defendants and in 1990 sent requests for admissions to them.
 
 II.
 
 7
 On March 11, 1992, the district court issued notices in all five actions pursuant to Local Rule 41.1. This rule provides:
 
 
 8
 (a)(1) Whenever in any civil action the clerk shall ascertain that no proceeding has been docketed therein for a period of ONE (1) year, he shall then mail notice to all persons who have entered an appearance in such a case that, subject to the provisions of subsection (a)(3), the case will be dismissed without further notice thirty (30) days after the sending of the notice.
 
 
 9
 In response to this notice, appellant requested an eight-month extension of time. He based this request on his assertions that since the filing of the five actions in 1989 the Department of Corrections (DOC) had confiscated appellant's legal papers and had failed to return them to appellant, had opened appellant's legal mail, had denied him access to the law library during "lock downs" and had made it difficult for him to obtain typewriting materials.
 
 
 10
 The district court denied appellant's motion and dismissed the five actions. The court accepted as true appellant's allegation that his legal files had been confiscated. It nonetheless found that this did not "satisfactorily explain" appellant's inaction and his failure to communicate with the district court.
 
 III.
 
 11
 A district court's sua sponte power to dismiss an action for want of prosecution is " 'an inherent power,' governed not by rule or statute but by the control necessarily vested in the courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R.R. Co., 370 U.S. 626, 630-631 (1962) (footnote omitted). "[T]his power is necessary to prevent undue delays in the disposition of pending cases, docket congestion, and the possibility of harassment of a defendant." Zavala Santiago v. Gonzalez Rivera, 553 F.2d 710, 712 (1st Cir. 1977). However, such dismissals are "drastic sanctions, which should be employed only when the district court, in the careful exercise of its discretion, determines that none of the lesser sanctions available to it would truly be appropriate." Id. (footnote omitted).
 
 
 12
 We review sua sponte dismissals based on lack of prosecution for abuse of discretion. Enlace Mercantil Internacional, Inc. v. Senior Indust., Inc., 848 F.2d 315, 317 (1st Cir. 1988). In conducting this review, we must examine all relevant circumstances. Asociacion de Empleados del Instituto de Cultura Puertorriquena v. Rodriguez Morales, 538 F.2d 915, 916 n.2 (1st Cir. 1976). Among the pertinent factors we consider are the history of the litigation, the length and type of delay, the nature of the underlying claims, the possible prejudice to defendants and the presence of an adequate excuse for a plaintiff's inaction. See Carribbean Transp. Sys., Inc. v. Autoridad de las Navieras, 901 F.2d 196, 197 (1st Cir. 1990).
 
 
 13
 Turning to the case at hand, we first note that in two of the actions, appellant never made service of process on the defendants named in the complaints. This in itself suffices for a finding of lack of prosecution. See id. In two out of the three actions in which service of process was accomplished, appellant took no steps to further the progress of the actions after the answers were filed in 1989. In the one action where the proceedings did advance beyond the filing of the defendants' answers, appellant sent requests for admissions to the DOC in July 1990. Thus, by the time the Local Rule 41.1 notice was sent in March 1992, appellant had done nothing in four of the cases for almost three years and in the fifth case for well over one year.
 
 
 14
 A clear record of delay "measured in years," as in the case at hand, will support a dismissal for want of prosecution. See Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir. 1987). Appellant asserts on appeal that he did "everything possible" to alert the DOC and the district court to the problem of the missing legal files and interference by prison officials with his personal papers and mail. Specifically, he states that he filed a protective order in the district court in 1990. To support his position, appellant refers to the first addendum to his brief. While a review of the material included in addendum # 1 indicates that appellant pursued his complaints within the prison system, there is no evidence that appellant contacted the district court in any way to alert it to his difficulties. The only reference to a protective order is in papers concerning another action filed by appellant in the district court.
 
 
 15
 We find appellant's excuse inadequate to explain such long delays in the prosecution of these actions. In light of appellant's knowledge in 1989 that he would have difficulty in pursuing his complaints due to defendants' alleged obstructive conduct, he was in a position to appeal to the district court for relief. See Medeiros v. United States, 621 F.2d 468, 470 (1st Cir. 1980) (where plaintiff knew about unavailability of expert witness for approximately five months prior to trial date and was, as a result, unable to proceed on day of trial, dismissal warranted); Zavala Santiago, 553 F.2d at 713 (initial burden to go forward is on plaintiff and failure to alert district court to problems is one factor supporting dismissal for failure to prosecute). This is not a case where, although a significant amount of time had passed between the filing of the complaint and the dismissal for want of prosecution, the parties diligently acted to advance the case. See Richman v. General Motors Corp., 437 F.2d 196, 199 (1st Cir. 1971) (where parties actively pursued action, outright dismissal too harsh a sanction). Rather, appellant essentially did nothing.
 
 
 16
 In light of his ability, as the district noted and appellant himself acknowledges, to pursue his other federal actions, his inertia in these cases becomes less supportable. Although appellant's conduct cannot be called contumacious, it is plain that he has unreasonably delayed in advancing his causes of action and in applying to the district court for relief. Indeed, his request for an eight-month extension of time in response to the notice of dismissal only highlights the likelihood that appellant will continue to act in a dilatory manner. In such a situation, dismissal is not too harsh a sanction. See Medeiros, 621 F.2d at 470-71 (delay by plaintiff in availing himself of discovery, although not "contumacious," is a sufficient ground for dismissal). We also note that the merits of appellant's underlying claims are questionable and that the long pendency of this action has likely resulted on prejudice to defendants. Thus, we cannot say that the district court abused its discretion in dismissing the complaints under Fed. R. Civ. P. 41(b) and Local Rule 41.1.
 
 
 17
 The judgments of the district court are affirmed.